J-S13037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LEEON ANTONIO FRASIER :
:
Appellant : No. 1453 MDA 2019

Appeal from the Judgment of Sentence Entered April 22, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005489-2018

BEFORE:  STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:  **FILED MARCH 27, 2020**

Leeon Antonio Frasier (Frasier) appeals from the judgment of sentence imposed in the Court of Common Pleas of Dauphin County (trial court) after his bench conviction of Aggravated Assault, Strangulation and Theft by Unlawful Taking.[1]  We vacate Frasier's judgment of sentence for Theft and affirm as to the remaining convictions.

**I.**

We take the following factual background and procedural history from our independent review of the certified record and the trial court's September 25, 2019, opinion.  Jessica Oren (Oren) and Frasier were in a long-term extra

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2718(a)(1), and 3921, respectively.

marital relationship. On June 19, 2018, there was an incident between Oren and Frasier at the Congress Inn Hotel in Harrisburg, Pennsylvania, resulting in the filing of the underlying charges against Frasier. (*See* N.T. Trial, 4/22/19, at 9-10).

On July 12, 2018, Detective Robert Appleby of the Lower Swatara Township Police Department conducted a follow-up investigation of the incident and took a recorded statement from Oren at that time. In that statement, Oren told the detective that on June 19, 2018, Frasier texted Oren, accusing her of having sex with another man and demanding that she come outside to talk to him, texting, "Get out here now, or I'm bustin' all your windows out of your car." (*Id.* at 6). When Oren went outside to meet Frasier, he grabbed her by the neck and said, "oh, you're fuckin' another guy," and then began choking and yelling at her. (*Id.* at 8). Oren told Detective Appleby that she was scared for her life and thought she was "gonna die," but that she could not remember if Frasier threatened to kill her. (*Id.* at 9).

After choking her, Oren said that Frasier let go and started striking her in the face with what she believed was a closed fist. (*See id.* at 10). She was knocked out for at least a minute after being hit. (*See id.*). When she woke, Frasier was "halfway up the hill" with Oren's cell phone, which previously had been either on her person or in her purse. (*See id.* at 13).

As a result of this incident, Oren suffered a black eye that took two weeks to heal. (*See id.* at 24). Officer Patrick Ribec, the initial responding

officer, testified that immediately after the incident, Oren was frantic, with a big welt above her left eye. (**See** N.T. Trial, at 62). Detective Appleby testified that during the interview, "she had showed [him] a picture . . . the day after of the injury to her eye which was very black and shut." (**Id.** at 43). He remembered that when he saw the picture, he was "taken back by the severity of [Oren's] black eye". (**Id.** at 43-44). The Commonwealth provided photographic evidence that showed bruising and redness around Oren's neck. (**See** Commonwealth's Exhibit 4).

Oren was a resistant trial witness. She stated that she did not want to press charges against Frasier or testify against him, that she was on drugs on the night of June 19, 2018, and that she could not remember many of the events that transpired. However, Officer Ribec testified that based on his experience, she did not appear to be on drugs that night and she gave Detective Appleby a detailed account of the incident and the events leading up to it nearly a month after it occurred. (**See id.** at 62; Audio Statement, at 3-33). Furthermore, at trial, Oren stated for the first time that Frasier swung at her in reaction to her swinging at him first. (**See** N.T. Trial, at 13). However, Detective Appleby said that in the three to four times he had spoken with Oren previously, she never told him that she took the first swing at Frasier. (**See id.** at 46).

Frasier testified on his own behalf at trial. At the time of the incident, he was on state parole for robbery. He admitted to having an affair with Oren,

and that on the night in question, he waited until his wife was asleep before leaving the house to track her down. He stated that he wanted to confront her about lying, and that he "mugged her in her face, like slapped her [and] she fell to the ground," but that he did not strangle her. (*Id.* at 73; *see id.* at 77). He testified that after picking up Oren's cell phone and taking it, he put it on the pavement of a nearby parking lot and called her aunt to tell her where to find it, and that Oren's aunt retrieved the cell phone from where Frasier had left it and gave it back to her. On cross-examination, Frasier admitted that he threatened to break Oren's windows if she did not come out to talk to him because he thought she was either with another man or doing drugs, that he was 5'7" and 300 pounds, and that he grabbed her cell phone and walked away with it after she mentioned calling the police. (*See id.* at 78-81).

At the conclusion of trial, the trial court convicted Frasier of the previously mentioned charges. The trial court noted in its opinion that evidence suggested that Oren was terrified of retaliation by Frasier. (*See* Trial Court Opinion, 9/25/19, at 5 n.7). On April 22, 2019, it sentenced him to a term of not less than 54 nor more than 108 months' incarceration on the Aggravated Assault conviction. It sentenced him to serve not less than 12 nor more than 24 months' incarceration on the Theft by Unlawful Taking count, to run concurrently with the Aggravated Assault, and to a term of not less than 54 nor more than 108 months' incarceration on the Strangulation conviction,

also to run concurrently. The court denied his post-sentence motion and Frasier timely appealed. Both he and the court complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

## A.

On appeal, Frasier argues that the evidence was insufficient to sustain his conviction for Aggravated Assault, Strangulation and Theft.[2] (*See* Frasier's Brief, at 15-30).

---

[2] We apply the following standard of review:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, ____ A.3d ____, 2020 WL 702571, at *5 (Pa. Super. filed Feb. 12, 2020) (citation omitted).

As to his Aggravated Assault conviction, Frasier argues that he should have only been convicted of simple assault because the evidence was insufficient to establish that he intended to cause serious bodily injury when he placed his hands around Oren's neck and punched her in the face that was needed to make out the aggravated assault.[3] (**See** Frasier's Brief, at 15, 19-23).

Section 2702 of the Crimes Code provides, in pertinent part, that "A person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another . . . intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). "For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." **Commonwealth v. Gray**, 867 A.2d 560, 567 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005) (citation omitted).

In this case, the Commonwealth provided evidence of a text message exchange between Frasier and Oren that occurred immediately before the assault. In those text messages, Frasier was angry, accused Oren of seeing other men, and told her that if she did not immediately answer the door, he was going to break all of her car's windows. In her audio statement, Oren

---

[3] The Commonwealth conceded at trial that Oren did not actually sustain serious bodily injury. (**See** N.T. Trial, at 89).

said that Frasier grabbed her by the neck until she could not breathe and indicated that she thought Frasier was going to kill her. Frasier cut off Oren's air to the point where she thought she was going to black out. Further, he punched her in the face until she passed out, and the pictures submitted by the Commonwealth show that her face was black and blue and "was not merely a 'slap' by [Frasier]." (Trial Ct. Op., at 5). The court also noted the size difference between Frasier and Oren, and that Frasier "grossly outweighed [her]." (**Id.**).

Although it noted that Oren stated that she did not want to press charges against Frasier as well as downplaying the relevant events, the trial court found her more descriptive statement to Detective Appleby to be more credible and relied on the version of events recounted therein because, at trial, "[t]here was evidence to suggest that [Oren] was terrified of retaliation from [Frasier]." (**Id.** at 5 n.7).

Based on the foregoing, we conclude there is sufficient evidence to support Frasier's conviction for Aggravated Assault when he "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of [Oren's] life," threatened, choked and punched her, resulting in her passing out and suffering a severe black eye. 18 Pa.C.S. § 2702(a)(1); **Gray**, **supra** at 567; **see also Edwards**, **supra** at *5. Because this was sufficient to establish his intent to cause severe bodily injury to Oren, Frasier's

challenge to the sufficiency of the evidence to establish the crime of Aggravated Assault lacks merit.

**B.**

As to his challenge to his conviction of Strangulation, Frasier maintains that the evidence was insufficient because the Commonwealth provided no eyewitness, medical testimony or any video surveillance to support the charge of Strangulation. He also contends the degree to which he impeded Oren's breathing when he had his hands around her neck was minimal, if at all. (*See* Frasier's Brief, at 25-28).

Section 2718 of the Crimes Code provides, in pertinent part, "[a] person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by . . . applying pressure to the throat or neck[.]" 18 Pa.C.S. § 2718(a)(1).

We first observe that Frasier's claim that there was no evidence provided of the Strangulation is belied by the record. The Commonwealth introduced and the court admitted Oren's statement to the police in which she stated that Frasier grabbed her by the neck and choked her. (*See* Trial Ct. Op., at 6; *see also* Audio Statement, at 8-9). She stated that she was scared for her life and thought she was going to die because she could not breathe and her air was cut off. (*See* Audio Statement, at 8-9). The Commonwealth provided photographic evidence that showed bruising and redness around Oren's neck. (*See* Commonwealth's Exhibit 4).

Moreover, there is no requirement that the Commonwealth provide either medical testimony or surveillance footage to support a charge of Strangulation. The fact that Oren told Detective Appleby that her breathing was impeded to the point that she thought she was going to pass out and she was afraid for her life also contradicts Frasier's claim that he did not intentionally or knowingly impede her breathing and that the degree of the impediment was minimal. While we acknowledge that Oren testified that Frasier only impeded her breathing "a little bit," as stated previously, the court observed that, at trial, Oren appeared extremely fearful of Frasier and of his possible retaliation against her, but it found her statement to Detective Appleby, which provided a much more detailed account of the incident, to be credible. Finally, although Frasier claims that "a little bit" of breathing impediment is not sufficient to establish Strangulation, there is nothing in the statute that sets the degree of breathing that is required to be impeded before Strangulation has occurred.

Based on the foregoing, the Commonwealth provided sufficient evidence to establish the crime of Strangulation making Frasier's challenge to the sufficiency of the evidence meritless.

**C.**

Finally, Frasier maintains that the evidence was insufficient to support his Theft conviction because it showed that he did not intend to keep Oren's cell phone permanently but instead, placed the undamaged property in a safe

location from which it was retrieved by Oren's aunt. (**See** Frasier's Brief, at 29-30).

Pursuant to Section 3921 of the Crimes Code, "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to **deprive** him thereof." 18 Pa.C.S. § 3921(a) (emphasis added.). The Crimes Code defines "deprive" as:

> (1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

> (2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S. § 3901. To make out the offense then, the person taking the property must do so either permanently or an extended period and/or dispose of the property with little likelihood that the owner will get the property back.

In this case, Oren told police that she had her cell phone before she blacked out, and that when she woke up, Frasier had taken it and was walking away in possession of it. It is undisputed that Frasier then left the cell phone on the ground in a parking lot, called Oren's aunt to retrieve it, and she did so, returning the cell phone to Oren. As can be seen, Frazier did not intend to keep the property permanently or for an extended period and did dispose of it, making it unlikely Oren would recover it. Accordingly, the trial court erred in finding that there was sufficient evidence to establish that he committed Theft by Unlawful Taking.

Accordingly, we reverse the court's conviction of Frasier for Theft by Unlawful Taking and vacate that portion of Frasier's judgment of sentence as to Theft. Remand for resentencing is not necessary, however, because the Theft sentence was imposed to run concurrently with the sentence for Aggravated Assault. Hence, vacating the judgment of sentence for Theft does not affect the overall sentencing scheme. *See Commonwealth v. Lomax*, 8 A.3d 1264, 1268-69 (Pa. Super. 2010) (remand is not required when vacating a judgment of sentence will not disturb overall sentencing scheme).

Judgment of sentence for Theft vacated. Judgment of sentence affirmed as to remaining convictions.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2020

- 11 -